HOLME ROBERTS & OWEN LLP
George Haley, #1302
  george.haley@hro.com
Blaine B. Benard,  #5661
  blaine.benard@hro.com
Craig Buschmann, #10696
  craig.buschmann@hro.com
299 South Main Street, Suite 1800
Salt Lake City, UT  84111-2263
Telephone:  (801) 521-5800
Facsimile:  (801) 521-9639

Attorneys for Plaintiff GOOGLE INC.

---

IN THE UNITED STATES DISTRICT COURT,
DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| GOOGLE INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>PACIFIC WEBWORKS, INC., a Nevada corporation, and DOES 1-50,<br><br>                    Defendants. | Case No. _2:09-cv-1068_<br>Judge Bruce S. Jenkins<br>**COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION; FEDERAL TRADEMARK DILUTION; FEDERAL CYBERPIRACY; STATE UNFAIR COMPETITION; VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT; STATE TRADEMARK DILUTION; AND COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**<br><br>**JURY TRIAL DEMANDED** |

---

       This action seeks to stop a widespread Internet advertising scam that is defrauding the

public by misusing the famous Google brand.  The scam victimizes unsuspecting consumers by

prominently displaying the famous GOOGLE mark, by suggesting sponsorship by the plaintiff,

Google Inc. ("Google"), and by urging consumers to obtain a kit supposedly showing them how

to make money working from home with Google.  The kit is advertised as free, except for a

nominal shipping and handling charge or access fee. However, people who sign up for these offers have their credit cards charged with substantial recurring monthly fees. They also receive little of value, or nothing at all, in return for their payments.

Because of the prominent use of the GOOGLE mark and false or misleading statements in the advertisements, consumers are tricked into believing – falsely – that these work-at-home kits are offered, sponsored or endorsed by Google. Consumers have sent letters and e-mails to Google complaining about fraudulent charges. Many have asked Google for a refund or asked Google to cancel the recurring charges, even though Google is not connected to the solicitations.

Google has informed the victims that Google is not affiliated with the scam and has referred victims to the Federal Trade Commission ("FTC"). Google has demanded (to no avail) that websites involved with the scam stop using Google's name and marks, or similarly confusing names and marks. This summer, the FTC obtained an injunction and asset freeze in the District of Nevada against other websites operating a virtually identical scam. While the injunction did lead to removal of a few of the scam websites, thousands more remain, including those associated with Defendants. This, in turn, has compelled Google to file this lawsuit.

Last month, a class action was filed in state court in Illinois against Defendant Pacific WebWorks, Inc. ("PWW"), over the work-at-home scam. But that action seeks no preliminary injunctive relief to stop PWW or others involved in the scheme from continuing to use the GOOGLE name and mark to defraud the public during the time it takes to litigate class certification and the merits. And because that action only alleges claims based on Illinois law and only seeks to certify a class of Illinois residents, even a final judgment in that case may not stop the use of the GOOGLE name and mark to defraud members of the public in other states.

To stop this illegal and infringing use of its trademarks in perpetuating a fraud on the public, Plaintiff Google, by and through its attorneys, sues Defendants Pacific WebWorks, Inc., and Does 1-50 (collectively and individually referred to as "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

This is a civil action for trademark infringement, dilution, unfair competition, and cyber-piracy under the Lanham Act, 15 U.S.C. § 1114 and 1125 (a), (c) and (d), state law trademark dilution under Utah Code Ann. § 70-3a-403, common law trademark infringement, violation of the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1-§ 13-11-6 and § 13-11-19, and violation of the Utah Unfair Competition Act, Utah Code Ann. §§ 13-5a-102 and 13-5a-103.

## THE PARTIES

1.     Google is a Delaware corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.  Widely recognized as a global technology leader, Google owns U.S. trademark registrations for several famous GOOGLE marks, including its iconic logo, and common law rights in the Google name, logo and related marks.

2.     Defendant Pacific WebWorks, Inc. is a Nevada Corporation with its principal place of business at 230 West 400 South, 1st Floor, Salt Lake City, Utah 84101.

3.     Google is ignorant of the true names and capacities of the defendants sued in this Complaint as Does 1 through 50, inclusive, and therefore sues these defendants by such fictitious names.  Google will amend this Complaint to allege the true names and capacities of the Doe defendants when ascertained.  Each of the fictitiously named defendants is responsible in some manner for the conduct alleged in this Complaint, and Google's damages are actually and proximately caused by the conduct of such defendants.

3

4.      Upon information and belief, the Doe Defendants operate as part of a common enterprise with PWW and/or each other to perpetuate Internet scams on unsuspecting consumers using the trusted Google brand.  Upon information and belief, Defendants engage in the illegal and infringing acts alleged below through an interrelated network of entities that share common ownership, officers, managers, office locations, business and accounting functions.  To avoid detection and identification of all those behind the scam, this network includes an ever-changing coterie of websites that utilize the same templates to generate the same fake news stories, fake testimonials, fake blogs and pressure tactics to drive unsuspecting consumers to credit card processing sites like those run by PWW.  Because they have operated as a common enterprise, each Defendant is jointly and severally liable for the unlawful and infringing acts alleged below.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Google's Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has supplemental jurisdiction over Google's pendent state law claims pursuant to 28 U.S.C. § 1367 in that the state law claims are integrally interrelated with Google's federal claims and arise from a common nucleus of operative facts such that the administration of Google's state law claims with its federal claims furthers the interest of judicial economy.

7.      This Court has personal jurisdiction over Defendants because PWW and, on information and belief, the Doe Defendants, maintain a place of business in Utah.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant PWW resides in this judicial district and because the Doe Defendants are subject to personal jurisdiction in this district.

4

**DEFENDANTS' SCHEME TO DEFRAUD THE PUBLIC USING GOOGLE'S MARKS**

9.      Defendants deceive the public by misusing the famous Google brand and GOOGLE marks to sell to consumers work-at-home kits purporting to train and enable consumers to earn money using Google services.  The scheme is advertised under a variety of names that all infringe upon Google's good name and trademarks, including, among others, Google Adwork, Google ATM, Google Biz Kit, Google Cash, Earn Google Cash Kit, Google Fortune, Google Marketing Kit, Google Profits, The Home Business Kit for Google, Google StartUp Kit, and Google Works.

10.      At the heart of the scheme is a false representation that consumers can participate in a Google-sponsored program that will allow them to make hundreds of dollars a day working at home performing a simple task that requires no particular experience or qualifications. Although the program is often advertised as "free," in fact consumers must pay an "instant access" fee for online access to a members-only portal, or a "shipping and handling fee" for a DVD, that, they are told, will explain how to make money through the program.  Consumers must pay the fee by submitting their credit or debit card information through a website.

11.      After making this initial payment, many consumers receive nothing.  Those who do get something often receive DVDs containing viruses, with no information of value, or they receive a DVD or access to an online portal containing information available free of charge elsewhere on the Internet, including from Google's own free online help center.  Consumers are not enrolled in any program that provides opportunities for generating income.  Instead, they are subjected to continuing monthly fees that often exceed $50 and range as high as $79.90  After discovering that they have been duped, consumers typically find it difficult, if not impossible, to

5

cancel the continuing charges, or get a refund of their money.

12.    Google is informed and believes that Defendants have generated millions of dollars in revenue from these recurring charges.

**Victims Sign Up For What They Are Misled To Believe Is A Google-Sponsored Business**

13.    Consumers typically encounter Defendants' work-from-home schemes via Internet advertisements or promotional e-mails, which then lead to what look like legitimate online news articles, blogs, social networking postings, or similar websites containing testimonials in which individuals claim to have made substantial sums of money through Google-related work-from-home business opportunities.  The news articles are formatted to look as if they originate with a real newspaper or news agency.  The blogs and other social networking posts are made to look like genuine blogs or posts, and as if they came from unrelated individuals that used the work-from-home products.  In actuality, these sites are not authentic.  Virtually none of the articles are published by actual news outlets.  The scam artists pick names that are close to real publications to add a false air of legitimacy and to dupe unsuspecting consumers.  For example, there is no readily identifiable news publication called "The New York Gazette News," which is one of the fake news publications that purportedly reported on the work-from-home program (*see* Exhibit 1), but there once was a "New York Gazette" that began operating in the 1700s.

14.    The blogs and other similar postings are variations based on templates, with identical content appearing on numerous seemingly unrelated sites.  For example, many sites use the same check, which was allegedly issued by Google to the alleged author of the blog:

6



The check is used repeatedly in many ads. While it purports to be payable to different people, it is the same check, in the same amount, with the same check number, drawn on the same account. (Examples of Defendants' marketing using this check are attached hereto as Exhibits 2-4.)

15.    Another tactic used by Defendants is to list several fake testimonials that were supposedly posted to the Comments section at the bottom of Defendants' websites touting the alleged success enjoyed by purported purchasers of Defendants' products. Invariably, however, the Comments section of these websites is disabled, thereby preventing deceived consumers from warning others about the scam. The reasons given for why comments cannot be posted vary – some will say, for example, "bandwidth exceeded" or "Comments Closed Due to Spam (back soon)" (*see* Exhibits 2, 3, 5) – but each Defendants' Comments section achieves the same result of preventing the truth from being told.

16.    Some Defendants blatantly use the same story line, but slightly alter the names to try to cover their tracks. For example, one fake article found at www.newyorkgazettenews.com discusses the alleged success story of "Mary Steadman," a supposed stay-at-home mom, and uses the same fraudulent check referenced above in connection with the following picture:

7



The fake articles give Mary's husband different names – and sometimes he is referred to as both "Kevin" and "David," evidence of a careless Defendant who failed to change the name consistently throughout.  (Examples of this fake news story are included in Exhibits 1 and 6.)

17.    Upon information and belief, Defendants try to direct their advertising to consumers with IP detection and geolocation technologies.  For example, a viewer in Denver who visits www.newyorkgazettenews.com will see an article identifying Mary Steadman as "a mother from "Denver, Coloradois" (Exhibit 1), while a viewer in Salt Lake will see an article identifying Mary Steadman as "a mother from Salt Lake City, Utahis," with the same run-on typo between the location and "is" as seen by the Denver-based viewer.  (Exhibit 6.)  The obvious goal of this phony news story is to fool consumers into believing that others in their home area are achieving success with the fraudulent program.

18.    In these phony news stories, Defendants try to add a sense of legitimacy to their scheme by blatantly free-riding off Google's trusted brand, referring to Google as, *inter alia*:

- "a big, reputable company,"
- "the safest bet ... Google," and
- "Online giant Google ... worth an estimated $100 Billion."

(*See, e.g.,* Exhibits 1 – 3, 5 – 7.)

19.     In these phony news stories, Defendants tout non-existent Google programs to prey on those who are particularly vulnerable – those who are desperately looking for work in a difficult economy.  For example, Defendants baldly refer to "Google Adwork," which is an obvious ploy to trade off of the good will associated with Plaintiff's Google AdWords Service, and claim, in one example:

> [O]nline giant Google, Inc. announces that in an effort to help stimulate the economy they are launching **Google Adwork** – an online link posting program that will allow anyone to make a living working from home.  The announcement was made during an international press conference that drew over 10 Million viewers.

(Exhibit 7.)  In fact, no such program exists.

20.     Defendants attempt to conceal their activities by using services to mask the true identity of the owner(s) of Defendants' websites and by frequently disabling their websites and/or pointing them at different credit card processing sites – sometimes at new web addresses that use new names and new variations of Google's marks.  Defendants' behavior is obviously calculated to keep one step ahead of consumers who become aware of the scam's true nature, and to interfere with efforts to identify Defendants.

**Lured In By The False Suggestion Of Sponsorship By Google, Victims Pay A Nominal Fee And Then Are Hit With Monthly Recurring Credit Charges Or Bank Withdrawals**

21.     In the end, the goal of this scam is to get consumers to provide their credit or debit card information to Defendants at credit card processing sites, including, but not limited, to sites such as to bskytracking.com, googleworkstoday.com, processcartcenter.com,

securecartcenter.com, sundaybikerides.com, safetrialoffers.com, selfprofitsmadeeasy.com, securesiteorders.com, yoursearchprofits.com, secureordersites.com, securesiteoffers.com, on1inetrack.com, profitcenterlearning.com, s3curehost.com, and visualwebtools.com. (Illustrative examples of these credit card processing sites are attached hereto as Exhibit 8.)

22.     Consumers are directed to these credit card processing sites in at least two ways: (1) they can click on a link on the initial page they visited, which often includes Google's name, such as Google Adwork, Google Payday Kit, Google Marketing Kit (*see, e.g.,* Exhibits 1 and 7); or (2) they try to leave the site and are confronted with a pop-up screen warning that the offer is time sensitive and that eventually directs  consumers to the processing site.  (*See, e.g.*, Exhibit 9.)

23.     To add a further element of purported legitimacy, consumers typically are asked to "qualify" for the opportunity or to "check availability" by submitting their names, e-mail addresses and more importantly, their home addresses, which will be used to collect the consumers' credit or debit card information.

24.     Defendants count on consumers not taking the time to research Defendants' scheme by setting a low initial price point for the scam, such as $1.97, or $2.95, which they describe as an "Instant Access Fee," a "processing fee," and/or a "shipping/processing fee."

25.     The most substantial financial harm to consumers occurs after the victims have submitted their credit or debit card information.  Many consumers have complained that they have found themselves enrolled unwittingly in a "negative option" program – *i.e.*, a program in which they are automatically enrolled and must contact Defendants to opt out of – that has caused them to incur significant recurring monthly charges by Defendants, frequently ranging up to $79.90 per month.  Once they discover the scam, many consumers have complained that they

10

have had difficulty opting out, and have been unable to obtain refunds from Defendants. Consumers have complained about this scam to the FTC, to state law enforcement, to the Better Business Bureau, and to Google. (Illustrative examples of these consumer complaints are attached hereto as Exhibit 10.)

26.     Some of the consumers who complain recall the name of the scam and/or website that lured them in, but others do not, which is not surprising given the insignificant disclosed up-front cost that consumers think is all they have to pay for this opportunity. But all the complaints have a common element: the victims were misled into believing Google was involved.

**Defendants Are Using Google's Trademarks In A Deceptive Manner To Attract Victims**

27.     As explained above, consumers are lured into the scam through a series of websites that prominently display the Google name, logo and other trademarks. These websites often include "google" in the domain name address, such as www.googlefortunemembers.com and www.googlemoneyprofits.com.

28.     The websites either explicitly state or strongly imply that the work-from-home program is operated by, or sponsored or approved by, Google. Many of the websites tell consumers that they will be paid directly by Google, and, as shown above, some even display a photograph of a check allegedly issued by Google.

29.     Google owns several U.S. federal trademark registrations for the GOOGLE word mark, including Reg. Nos. 2,806,075; 2,884,502; 2,954,071; and 3,570,103. Google also owns a U.S. federal trademark registration for its GOOGLE logo, Reg. No. 3,140,793. (Copies of the registration certificates for these registrations are attached hereto as Exhibit 11.)

30.     Google also owns nine pending U.S. federal trademark applications for marks that

11

include the word GOOGLE (Serial Nos. 77/082,272, 77/764,401, 77/835,616, 77/831,323, 78/433,507, 78/698,285, 78/828,042, 78/941,798, and 78/920,293).

31.     Google has used its GOOGLE mark since at least 1997 and has acquired a tremendous amount of goodwill in the name and mark.  Through Google's extensive use, the GOOGLE name and mark have become famous, and Google has become a trusted brand.

32.     Google also owns a U.S. federal trademark registration for the mark ADWORDS in connection with "dissemination of advertising for others via the Internet" (Reg. No. 2,794,616).  Google's AdWords Service enables advertisers to create and run ads in conjunction with search results at Google.com and on Google's advertising network.  AdWords does not involve the payment of money by Google to others.  (A copy of the registration certificate for this registration is attached hereto as Exhibit 12.)

33.     Google has not authorized any of the Defendants to use Google's trademarks, and Google has not sponsored or approved any of Defendants' websites.

34.     Misled by the prominent, deceptive use of Google's name and trademarks, many consumers have complained to Google that their credit or debit cards have been charged without authorization and have requested that Google refund those charges, when, in fact, Google never charged their cards and has no role in operating the infringing websites.

35.     Google sent letters to more than 30 websites involved in the work-at-home scheme demanding that they stop using Google's name and marks, and filed complaints with the Whois Data Problem Reporting System regarding more than 1,000 others utilizing Google's name and mark in domain names.  While some sites were removed and/or domains were disabled, they were often replaced by others operating the same scam under different names.

**The FTC Recently Took Down A Work-From-Home Scheme Similar to Defendants'**

36.    On June 22, 2009, the FTC filed an action in U.S. District Court for the District of Nevada to temporarily restrain and preliminarily and permanently enjoin certain entities from operating work-from-home schemes under the name and mark "Google Money Tree." *Federal Trade Commission v. Infusion Media, et al.*, No. 2:09-cv-01112-RCJ-LRL (the "FTC Action").

37.    In its complaint, the FTC alleged that the defendants in the FTC Action had promoted home business opportunity kits through websites using domain names including googlemoneytree.com and googletreasurechest.com.  The FTC alleged that after consumers provide credit or debit card account information, ostensibly to pay a small shipping and handling fee, they are automatically enrolled in continuity programs through which recurring charges are made to their financial accounts.

38.    On June 23, 2009, the District Court entered a temporary restraining order enjoining the defendants in the FTC Action from conducting certain business practices and making certain representations, including any false representations, express or implied, that those defendants are affiliated with Google.  The temporary restraining order included an asset freeze, preservation of records and the appointment of a receiver.

39.    On September 10, 2009, the parties to the FTC Action stipulated to the entry of a preliminary injunction that continued the prohibition on certain business practices and false representations, the asset freeze, appointment of a receiver and other equitable relief.

**A Class Action Filed Against PWW In Illinois Offers No Immediate Relief**

40.    On November 9, 2009, Plaintiff Barbara Ford filed a class action complaint in the Chancery Division of the Circuit Court for Cook County, Illinois, against PWW and a John Doe

Defendant seeking, *inter alia*, to certify a class of Illinois residents who submitted payment to

PWW as a result of the work-at-home scheme and were charged anything other than the stated

shipping and handling or discount fee.  *Ford v. Pacific WebWorks, Inc.*, *et al.*, No. 09CH44278

(the "Illinois Action").  Defendant PWW has not yet filed an Answer in the Illinois Action.

      41.      In her complaint in the Illinois Action, Plaintiff Ford alleges five causes of action,

all under Illinois law – for Violation of the Illinois Consumer Fraud and Deceptive Business

Practices Act, Violation of the Uniform Deceptive Trade Practices Act, Violation of the

Automatic Contract Renewal Act, Unjust Enrichment and Breach of Contract – and seeks

restitution, damages, civil penalties and/or fines, and attorneys' fees.

      42.      With respect to injunctive relief, the complaint in the Illinois Action only prays

that the state court "[e]nter judgment for injunctive, statutory and/or declaratory relief as is

necessary to protect the interests of Plaintiff and the Classes."

**Both Consumers And Google Continue To Be Harmed By Defendants' Schemes**

      43.      The FTC Action and injunction targeted other defendants and the Illinois Action

seeks no immediate injunctive relief.  Google therefore has continued to receive complaints from

consumers about work-from-home schemes deceptively using Google's name and marks, and

consumers continue to demand refunds from Google.  The false association Defendants have

created between Google and Defendants' work-from-home schemes continues to damage

Google's reputation and the goodwill that Google has established in its name and trademarks.

Unless enjoined, Defendants will continue to lure consumers into their scam through the

deceptive misuse of Google's trusted brand, thereby irreparably harming Google as well as

members of the public who are deceived by the scam.

14

## FIRST CLAIM FOR RELIEF

### Infringement of Federally Registered Trademarks and Service Marks

### 15 U.S.C. § 1114(1)(a)

44.     Google realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

45.     Google has used its federally registered GOOGLE name and mark in commerce in connection with virtually all of its products and services, including its search engine, its AdSense advertising service, and its AdWords advertising service.

46.     Google has also used its federally registered ADWORDS mark in commerce in connection with the dissemination of online advertising.

47.     Defendants had both actual and constructive knowledge of Google's ownership of and rights in its federally registered marks prior to Defendants' infringing use of those marks.

48.     Defendants adopted and continue to use in commerce Google's federally registered marks, and marks confusingly similar thereto, with full knowledge of Google's superior rights, and with full knowledge that their infringing use of Google's marks was intended to cause confusion, mistake and/or deception.

49.     Defendants offer their goods and services under the infringing marks in the same channels of trade as those in which Google's legitimate goods and services are offered.

50.     Defendants' infringing use of Google's name and marks in connection with the work-from-home schemes is likely to cause, and has caused, confusion, mistake or deception as to the affiliation, connection or association of the schemes with Google, in violation of 15 U.S.C. § 1114.

51.    Defendants' actions constitute knowing, deliberate, and willful infringement of Google's federally registered marks.  The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

52.    As a result of Defendants' infringement, Google has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Google in its federally registered marks.  This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Google has no adequate remedy at law. Google will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## SECOND CLAIM FOR RELIEF

### Federal Unfair Competition and False Designation of Origin

### 15 U.S.C. § 1125(a)

53.    Google realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

54.    Defendants have deliberately and willfully attempted to trade on Google's long-standing and hard-earned goodwill in its name and marks and the reputation established by Google in connection with its products and services, as well as in order to confuse consumers as to the origin and sponsorship of Defendants' goods and to pass off their products and services in commerce as those of Google.

55.    Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive Google of the ability to control the consumer perception of its products and services offered under Google's marks, placing the valuable reputation and goodwill of Google in the hands of Defendants.

16

56.     Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants and their work-from-home schemes with Google, and as to the origin, sponsorship or approval of Defendants and their products and services, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

57.     Defendants had direct and full knowledge of Google's prior use of and rights in its marks before the acts complained of herein.  The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

58.     As a result of Defendants' aforesaid conduct, Google has suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by Google in its marks.  This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Google has no adequate remedy at law.  Google will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

### THIRD CLAIM FOR RELIEF

### Federal Dilution By Tarnishment

### 15 U.S.C. § 1125(c)

59.     Google realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

60.     The GOOGLE name and mark – both in word and logo form – are famous and distinctive and are entitled to protection against dilution by blurring or tarnishment.

61.     Defendants commenced use of the GOOGLE name and marks in commerce after the "Google" name and mark had become famous and distinctive.

62.     By using the GOOGLE name and marks in connection with work-from-home

schemes in which consumers are deceived as to the nature of the services provided, the origin of

those services, and the charges for those services, Defendants have injured and will continue to

injure Plaintiff Google's business reputation, have tarnished the distinctive quality of Plaintiff's

famous name and marks, and have lessened the capacity of Plaintiff's famous GOOGLE name

and marks to identify and distinguish Plaintiff Google's goods and services, in violation of 15

U.S.C. § 1125(c).

63.     As a result of Defendants' tarnishment of Google's name and marks, Google has

suffered substantial damages, as well as the continuing loss of the goodwill and reputation

established by Google in its marks.  This continuing loss of goodwill cannot be properly

calculated and thus constitutes irreparable harm and an injury for which Google has no adequate

remedy at law.  Google will continue to suffer irreparable harm unless this Court enjoins

Defendants' conduct.

### FOURTH CLAIM FOR RELIEF
### Violation of Anti-Cybersquatting Consumer Protection Act (Cyberpiracy)
### 15 U.S.C. § 1125(d)
### (As to the Doe Defendants Only)

64.     Google realleges and incorporates each and every allegation contained in the

paragraphs above with the same force and effect as if said allegations were fully set forth herein.

65.     As alleged above, Defendants have registered, trafficked in, and used numerous

Internet domain names that contain or consist of Google's marks (the "Infringing Domain

Names").  Defendants have undertaken their activities with respect to the Infringing Domain

Names using privacy protection services that prevent Google from discovering the Doe

Defendants' true identities through publicly available information.  (A representative, non-

exhaustive list of the Infringing Domain Names is attached hereto as Exhibit 13.)

66.     Doe Defendants have registered and are using the Infringing Domain Names without Google's authorization and with a bad faith intent to profit from Google's marks, in violation of 15 U.S.C. § 1125(d).

67.     Google's marks were distinctive and famous at the time the Doe Defendants registered the Infringing Domain Names and remain distinctive today.

68.     The Infringing Domain Names were confusingly similar to Google's marks at the time Doe Defendants registered the Infringing Domain Names, and they remain so today.

69.     The Infringing Domain Names do not resolve to websites owned by Google. Rather, they resolve to websites controlled by Doe Defendants, which profit from their use.

70.     Doe Defendants did not believe and could not reasonably have believed their use of the Infringing Domain Names constituted fair use or was otherwise lawful.

71.     As a result of Doe Defendants' wrongful registration and use of the Infringing Domain Names, Google has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Google in its marks.  This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Google has no adequate remedy at law.  Google will continue to suffer irreparable harm unless this Court enjoins Doe Defendants' conduct and orders that the Infringing Domain Names be transferred to Google.

## FIFTH CLAIM FOR RELIEF

### Violation of Utah Unfair Competition Act

### Utah Code Ann. § 13-5a-102

72.     Google realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

73.     Defendants have engaged in unfair competition by intentionally using Google's name and marks to trade on Google's long-standing and hard-earned goodwill in its name and marks, as well as in order to confuse consumers as to the origin and sponsorship of Defendants' goods and services and to pass their products and services off as those of Google.

74.     Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants and their work-from-home schemes with Google, and as to the origin, sponsorship or approval of Defendants and their products and services.

75.     Defendants had direct and full knowledge of Google's prior use of and rights in Google's marks before the acts complained of herein.

76.     Defendants' unlawful and unfair conduct has led to a material diminution of the reputation and goodwill established by Google in its marks.

77.     As a result of Defendants' aforesaid conduct, Google has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Google in its marks.  This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Google has no adequate remedy at law.

#263293 v4 slc

## SIXTH CLAIM FOR RELIEF

### Violation of Utah Consumer Sales Practices Act

### Utah Code Ann. § 13-11-4

78.     Google realleges and incorporates each and every allegation contained in the

paragraphs above with the same force and effect as if said allegations were fully set forth herein.

79.     Defendants have falsely and intentionally indicated that their work-from-home

schemes are affiliated with or sponsored or approved by Google, in violation of the Utah

Consumer Sales Practices Act, Utah Code Ann. § 13-11-4(2)(a).

80.     Defendants have falsely and intentionally indicated that Defendants are affiliated

with or sponsored or approved by Google, in violation of the Utah Consumer Sales Practices

Act, Utah Code Ann. § 13-11-4(2)(i).

81.     Defendants' conduct is likely to cause confusion, mistake or deception as to the

affiliation, connection or association of Defendants and their work-from-home schemes with

Google, and as to the origin, sponsorship or approval of Defendants and their products and

services.

82.     As a result of Defendants' aforesaid conduct, Google has suffered substantial

damages, as well as the continuing loss of the goodwill and reputation established by Google in

its marks.  This continuing loss of goodwill cannot be properly calculated and thus constitutes

irreparable harm and an injury for which Google has no adequate remedy at law.  Google will

continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

21

## SEVENTH CLAIM FOR RELIEF

### Trademark Dilution

### Utah Code Ann. § 70-3a-403

83.     Google realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

84.     The GOOGLE name and marks – both in word and logo form – are famous and distinctive in Utah, and are entitled to protection against dilution.

85.     Defendants commenced use of the GOOGLE name and marks after the GOOGLE name and mark had become famous and distinctive.

86.     By using the GOOGLE name and marks in connection with work-from-home schemes in which consumers are deceived as to the nature of the services provided, the origin of those services, and the charges for those services, Defendants have injured and will continue to injure Plaintiff Google's business reputation, have tarnished the distinctive quality of Google's famous name and marks, and have lessened the capacity of Google's famous name and marks to identify and distinguish Google's goods and services, in violation of Utah Code Ann. § 70-3a-403.

87.     In using the GOOGLE name and marks, Defendants willfully intended to trade on Google's reputation.

88.     As a result of Defendants' dilution of Google's name and marks, Google has suffered substantial damages, as well as the continuing loss of the goodwill and reputation in the GOOGLE marks.  This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Google has no adequate remedy at law. Google will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

#263293 v4 slc

## EIGHTH CLAIM FOR RELIEF

### Trademark Infringement and Unfair Competition

### Utah Common Law

89.    Google realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

90.    Defendants have deliberately and willfully attempted to trade on Google's long-standing and hard-earned goodwill in its name and marks and the reputation Google established in connection with its products and services, as well as to confuse consumers as to the origin and sponsorship of Defendants' goods and to pass their products and services off as those of Google.

91.    Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive Google of the ability to control the consumer perception of its products and services offered under Google's marks, placing the valuable reputation and goodwill of Google in the hands of Defendants.

92.    Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants and their work-from-home schemes with Google, and as to the origin, sponsorship or approval of Defendants and their products and services, in violation of Utah common law.

93.    As a result of Defendants' aforesaid conduct, Google has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Google in its marks.  This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Google has no adequate remedy at law.  Google will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

23

## JURY DEMAND

94.      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Google requests a

jury trial of all issues that may be tried to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Google prays for an Order and Judgment as follows:

1.      Entry of an order (on a preliminary and permanent basis) requiring that

Defendants and their officers, agents, servants, employees, owners and representatives, and all

other persons, firms or corporations in active concert or participation with them, be enjoined and

restrained from:

(a)      Using in any manner the GOOGLE mark, or any name, mark or domain

name that wholly incorporates the GOOGLE mark or is confusingly similar to or a colorable

imitation of this mark, including, without limitation, Google Adwork, Google ATM, Google Biz

Kit, Google Cash, Earn Google Cash Kit, Google Fortune, Google Income Library, Google

Marketing Kit, Google Profits, The Home Business Kit for Google, Google StartUp Kit, Google

Works, googlefortunemembers.com and googlemoneyprofits.com;

(b)      Using or displaying the Google logo on any websites, products, or

promotional materials in any false and/or deceptive manner;

(c)      Using in any manner the ADWORDS mark, or any name, mark or domain

name that wholly incorporates the ADWORDS mark or is confusingly similar to or a colorable

imitation of this mark;

(d)      Doing any act or thing calculated or likely to cause confusion or mistake

in the minds of members of the public or prospective customers of Google's products or services

24

as to the source of the products or services offered for sale, distributed, or sold, or likely to

deceive members of the public, or prospective customers, into believing that there is some

connection between Defendants and Google;

(e)     Committing any acts which will tarnish, blur, or dilute, or are likely to

tarnish, blur, or dilute the distinctive quality of the famous GOOGLE mark; and

(f)     Making any representations, express or implied, that Google is affiliated

with or sponsors or approves of Defendants or their products or services.

2.     Directing Defendants to transfer to Google (at no cost to Google) all domain

names that contain or consist of Google's marks, including but not limited to

www.googlefortunemembers.com and www.googlemoneyprofits.com;

3.     Ordering Defendants to preserve through trial and then deliver up for destruction,

pursuant to 15 U.S.C. § 1118, all Internet webpages / scripts / html code, articles, packages,

wrappers, products, displays, labels, signs, vehicle displays or signs, circulars, kits, packaging,

letterhead, business cards, promotional items, clothing, literature, sales aids, receptacles,

templates or other matter in the possession, custody, or under the control of Defendants or its

agents bearing the GOOGLE word mark or logo, or the ADWORDS mark, in any manner, or

any mark that is confusingly similar to or a colorable imitation of these marks;

4.     Ordering Defendants to take all steps necessary to cancel any state or local

business registrations, including corporate name registrations and dba filings, that include

Google's name or marks or amend those registrations to names that do not include Google's

name or marks, and to remove any references to any business registrations, including corporate

names and dba filings, that include Google's name or marks.

25

5.      Ordering Defendants to retain and disclose all communications with all individuals and entities with whom they engaged in any transaction relating to or arising from the use of Google's names or marks, or otherwise in furtherance of the scheme alleged herein;

6.      Directing Defendants to provide an accounting of profits made by Defendants as a result of Defendants' unlawful conduct;

7.      Ordering Defendants, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon Google within thirty (30) days after entry of the injunction a written report under oath describing in detail the manner and form in which Defendants have complied with the injunction, including ceasing all offering of services under Google's name and marks as set forth above;

8.      Ordering Defendants to pay a judgment in the amount of Google's actual damages under 15 U.S.C. § 1117 and Utah law, as well as Defendants' profits, and pre- and post-judgment interest pursuant to 15 U.S.C. § 1117, in a amount to be proven at trial;

9.      Ordering Defendants to pay Google's reasonable attorneys fees and costs of this action under 15 U.S.C. § 1117 and/or Utah law;

10.     Ordering Defendants to pay a judgment for enhanced damages under 15 U.S.C. § 1117 and punitive damages under Utah law as appropriate; and

11.     Granting Google such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 7th day of December, 2009.

HOLME ROBERTS & OWEN LLP

/s/ George Haley
George Haley, #1302
Blaine B. Benard, #5661
Craig Buschmann, #10696
Attorneys for Plaintiff Google Inc.

26

**TABLE OF EXHIBITS**

| Exhibits | Description |
|---|---|
| Exhibit 1 | The New York Gazette News – Denver |
| Exhibit 2 | Example of Defendants' marketing - Check |
| Exhibit 3 | Example of Defendants' marketing - Check |
| Exhibit 4 | Example of Defendants' marketing - Check |
| Exhibit 5 | Net News Daily – Kevin Steadman (Husband) |
| Exhibit 6 | The New York Gazette News – SLC |
| Exhibit 7 | Google Adworks |
| Exhibit 8 | Credit Card Order Site Samples |
| Exhibit 9 | Navigate Away Popup |
| Exhibit 10 | Consumer Complaints |
| Exhibit 11 | GOOGLE TM Registration Certificates |
| Exhibit 12 | ADWORDS TM Registration Certificate |
| Exhibit 13 | List of Infringing Domain Names |